## THE TRANSFER NO. 11.

#### (District Court, E. D. New York. April 4, 1923.)

**Collision ⟨⟩95(1)—Defendant's vessel entering channel held at fault.**

Where libelant's barge being towed up a harbor channel 600 to 800 feet in width, and in mid-channel to get the benefit of the tide, was collided with after exchange of signals of one whistle by car float on side of steam tug libeled coming in to the channel from another channel, which steam tug, notwithstanding its duty under steering and sailing rules No. 19 to keep out of way of libelant's barge, did not slow down, but continued its course, calculating erroneously that libelant's barge would be cleared, the libeled steam tug *held* solely at fault; steering and sailing rule No. 25, as to keeping to starboard side of a channel, not applying, as the vessels were not passing in a narrow channel.

In Admiralty. Libel by Francis H. Howland and another against the steam tug Transfer No. 11, the New York, New Haven & Hartford Railroad Company, owner. Decree for libelant.

Foley & Martin and J. A. Martin, all of New York City, for libelant.

Haight, Smith, Griffin & Deming and Henry M. Hewitt, all of New York City, for claimant.

Patrick J. Dobson, of New York City, for the tug Edward.

CAMPBELL, District Judge. The libelants are the owners of the barge Edgar C., which was taken in tow at Stapleton, Staten Island, on April 8, 1921, by the steam tug Edward, bound from Stapleton,

Staten Island, to Pier 2, Wallabout. The barge was light and was on three hawsers.

The Edward, with the barge in tow, crossed over towards Sixty-Ninth street, Brooklyn, to reach the Bay Ridge Channel, which runs between the Brooklyn shore and the anchorage, and then headed up said channel along the mid-channel to get the benefit of the tide. The Bay Ridge Channel was from 600 to 800 feet in width. Through the anchorage to said Bay Ridge Channel, almost opposite what were described as the Bridges, coal docks on the Brooklyn shore, was the channel called the 23-foot channel, the designation of "23-foot" indicating the depth of the water, and not the width of the channel.

When the Edward, with the barge Edgar C. in tow, was in said Bay Ridge Channel, some distance south of the 23-foot channel, the captain of the Edward first saw the steam tug Transfer No. 11, with two car floats, one on each side, in tow, coming southeast through the 23-foot channel to the Bay Ridge Channel, on a course which would cause them to cross that of the Edward. The said Transfer No. 11 and her tow were bound to the landing on the Brooklyn shore almost opposite the 23-foot channel known as the Bridges.

The Edward continued on her course for some distance, and when about 2,000 to 2,500 feet from the Transfer No. 11, the captain of the Edward, seeing that, if Transfer No. 11 continued on her course, she would cross that of the Edward, and the Edward being on the starboard side of the Transfer No. 11, the captain of the Edward gave one whistle, which was answered by one whistle from the Transfer No. 11.

Under rule 19 of the Steering and Sailing Rules, it was the duty of the Transfer No. 11 to keep out of the way of the Edward, but the Transfer No. 11 failed in this duty and continued on her course; the captain undoubtedly believing that Transfer No. 11 and her tow would clear the Edward and her tow. But in this he miscalculated, because the car float on the port side of the Transfer No. 11 struck the after port side of the barge Edgar C., about 14 feet from the stern, throwing her stern to starboard, causing the port hawser to part, and inflicting damage to the Edgar C.

Had the Transfer No. 11 slowed down on accepting the one-whistle signal from the Edward, the collision would not have occurred. This she was bound to do under the rule. Had the Transfer No. 11 slowed down, there would have been sufficient room to maneuver her and her tow when she passed out of the 23-foot channel into the Bay Ridge Channel, because her captain said the Bay Ridge Channel was 800 feet wide, and the Edward and her tow were therefore from 300 to 400 feet to the east of the west side of the channel, leaving sufficient room for the Transfer No. 11 to pass as signaled.

There is a dispute as to the condition of the weather, but it does not seem to me that it is of moment whether it was cloudy or clear, as each boat was clearly seen from the other, and signals exchanged at a time when, if they had been followed by the Transfer No. 11, the collision would have been avoided. Under the rule, it was the duty of the Edward to continue on her course at the same speed, and this duty was performed.

The Transfer No. 11 claims that the Edward was in fault and violated Steering and Sailing Rule No. 25, which provides, in narrow channels:

"Every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

But I do not think that rule applies, because these boats were not passing each other in a narrow channel, and the Transfer No. 11 was not crowded or forced over by the Edward's maintaining her course; on the contrary, there was sufficient room between the Edward and her tow and the west side of the Bay Ridge Channel for the Transfer No. 11 and her tow to safely pass, had the Transfer No. 11 obeyed the signal of the Edward, which she accepted.

The barge Edgar C. was without fault, and the libelant should have a decree against the steam tug Transfer No. 11, which I find to be solely to blame for the collision; the Edward being without blame and not in any degree responsible therefor.